**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD ROWELL and JOANN ROWELL,<br>                    *Plaintiffs*,<br><br>        v.<br><br>JEFFREY A. STECKER and HONEY LOCUST<br>FARMS, LLC,<br><br>                    *Defendants*. | Civil No: 14-4466 (KSH)<br><br><br><u>**OPINION**</u> |

**<u>Katharine S. Hayden, U.S.D.J.</u>**

I.    **INTRODUCTION**

Plaintiffs Ronald ("Rowell") and Joann Rowell ("plaintiffs") bring this action against

Jeffrey A. Stecker and Honey Locust Farms, LLC ("defendants") for damages arising from an

automobile accident that occurred on February 17, 2011, when a tractor trailer owned by Honey

Locust and operated by Stecker collided with a parked tractor trailer occupied by Rowell. After

their motion to dismiss was denied on June 24, 2015 (D.E. 27), defendants filed this motion for

summary judgment (D.E. 36), seeking dismissal of the complaint as untimely under the statute of

limitations.

II.    **FACTUAL AND PROCEDURAL HISTORY**

On February 17, 2011, at approximately 10:45 a.m. Rowell arrived at the National

Freight Inc. ("NFI") warehouse in Edison, New Jersey, where he backed his trailer into loading

dock number five. (D.E. 36-3 ("Kroll Decl."), Ex. B ("Rowell Dep.") at 13:2-13:10; 17:5-18:3.)

Rowell was employed by Hartt Transportation Systems, Inc. ("Hartt") as a long haul truck

driver.  (Kroll Decl., Ex. A ¶ 4.)  Stecker was employed in a similar capacity by Honey Locust.  (Kroll Decl., Ex. A ¶¶ 5-6.)

Rowell stayed inside his truck as it was being loaded. As Stecker backed his Honey Locust-owned tractor trailer into the NFI facility, he struck Rowell's truck.  (Rowell Dep. at 28:10-28:16.)  Stecker jumped out of his truck and ran over to ask Rowell if he was alright.  (*Id.* at 21:7-21:8.)  According to Rowell, he told Stecker that he needed some identifying information from him, but Stecker was in a hurry and left without providing any.  (*Id.* at 22:23-23:2; 24:9.)  According to Stecker, Rowell told him that he was fine and not to worry about him or the truck, so Stecker went on his way.  (Kroll Decl., Ex. K ("Stecker Dep.") at 8:11-8:25.)  Regardless of the exact conversation, it is undisputed that the accident occurred and that the two men spoke.  (Kroll Decl., Ex. K, at 4-6.)

Immediately following the accident, Rowell wrote up an accident report for Hartt.  (Kroll Decl., Ex. C ("Hartt Accident R.").)  He did not call the police.  (Rowell Dep. at 26:11-27:9.)  Under the section of the report entitled "Other Person's Information," Rowell wrote that the name of the company involved was "Loocust" with the address "East Berlin, PA 17316."  Rowell identified the truck that hit his as "International ?" with a designation "Truck. K-27."  (*Id*.)  That same day, Rowell wrote in his Driver's Daily that the "Loocust driver backed into me about 11:15 a.m."  (Kroll Decl., Ex. E).  Stecker provided his own accident report to Honey Locust.  (Stecker Dep. at 13:12-13; Kroll Decl., Ex. J ("Stecker Accident R.").)

Honey Locust asserts that it first learned of the accident when Hartt's safety assistant, Lana Paradis, called Harold Bumbaugh, the director of safety for Honey Locust, and told him that one of Honey Locust's drivers had dented a step on a Hartt truck.  (Kroll Decl., Ex. G at

9:17-22.)[1]  Bumbaugh arranged with Paradis to pay to have the step repaired.  (*Id.* at 10:1-8.)

Accordingly, on February 17, 2011, Paradis sent Bumbaugh photographs of the damage, and on

March 8, 2011, she sent him an invoice for $144.95 to cover the repairs.  (Kroll Decl., Ex. H.)

Just ten days later Honey Locust reimbursed Hartt.  (Kroll Decl., Ex. I.)

More than a year later, on April 5, 2012, Ronald Rowell and his wife, Joann, filed their

first lawsuit.  *Rowell v. The Hain Celestial, et als.*, 2:12-cv-02294 (ES) (MAH) ("*Rowell I*").

Although Rowell had listed "Loocust" on the Hartt Accident Report as the name of the company

involved in the accident, he alleged in *Rowell I* that Kevin Mitchell and King Transportation

owned and/or operated the tractor trailer involved.  (Kroll Decl., Ex. L.)  The initial *Rowell I*

complaint also named Hain Celestial Group, Inc. as defendants by virtue of their ownership

and/or management of the warehouse where the accident took place.  (*Id.*)  Eight months later,

on December 4, 2012, the Rowells filed an amended complaint, removing Kevin Mitchell as a

defendant and alleging that Claudemir Silva operated the tractor trailer, owned by King

Transportation.  (Kroll Decl., Ex. M.)  While Silva admitted that he was at the NFI facility on the

day of the accident, he consistently denied coming into contact with another vehicle there.[2]

(Kroll Decl., Ex. N; Kroll Decl., Ex. O.)  Eight months after Silva's deposition was completed,

on June 12, 2014, his attorney wrote a letter to the court seeking permission to file a summary

judgment motion based on Silva's discovery of the Stecker Accident Report, which made clear

that a third-party was liable for the damages caused by the accident.  (Kroll Decl., Ex. P.)  In the

letter, Silva explained that after reviewing the Hartt Accident Report he searched for trucking

---

[1] Honey Locust did not see the Stecker's accident report until Stecker returned to the terminal late on the day of the accident.  (Kroll Decl. Ex. G at 9:1-7.)

[2] The Rowells explained that at the time this testimony was provided, they believed that Silva's assertion that he was not involved in the accident was "false and/or disproven" by the warehouse documentation produced by NFI confirming that "Mr. SILVA **was present at the facility on the accident date at** around the same time as Plaintiff… and **used a loading dock adjacent to Plaintiff**." (D.E. 37 at ¶¶ 36, 40, 41, 42 (emphasis in original).)

companies located in East Berlin, PA, and located Honey Locust, from which he subpoenaed the

Stecker Accident Report that confirmed Stecker, not Silva, had hit Rowell's tractor trailer.  (*Id.*)

Following a stipulation of dismissal, *Rowell I* was closed on October 6, 2014.

On July 15, 2014, plaintiffs called upon the Court's diversity jurisdiction and filed the

within action against Honey Locust and Stecker, asserting claims for personal injury and loss of

consortium, and seeking damages in excess of $10,000,000, all stemming from the accident on

February 17, 2011.  (D.E. 1 ¶¶ 21, 29, 34.)  In lieu of answering, Honey Locust and Stecker

moved to dismiss the complaint as barred by the applicable statute of limitations, N.J.S.A.

2A:14-2, which requires that actions for personal injury be commenced "within two years next

after the cause of any such action shall have accrued."  (D.E. 8.)  Plaintiffs argued in their

opposing papers, which included a cross-motion for summary judgment (D.E. 13-15), that the

statute should be equitably tolled due to defendants' failure to report the accident to the police,

and that they are entitled to statutory tolling pursuant to N.J.S.A. 2A:14-22(a) because the

defendants were never domiciled in the State of New Jersey.

On June 23, 2015, the Court heard arguments on the motions and denied them,

concluding that it was inappropriate to dismiss the statute of limitations affirmative defense at

that point in the litigation.  (D.E. 27; D.E 54.)  Following further discovery, Honey Locust and

Stecker filed for summary judgment, renewing their argument that this case is time barred.  (D.E.

36.)

## III.    STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where

"the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Where there are disputed material facts, the Court must

draw all inferences in favor of the party opposing the motion. *Cowgil v. Raymark Indus.,* 780

F.2d 324, 329 (3d Cir. 1985). Disputed facts are only material when they form genuine triable

issues as to the matter before the Court. *Matsushita Elec. Indus., v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). But where no disputed material facts exist, "we consider the undisputed facts

in the pleadings, affidavits, and exhibits and determine whether the movant was entitled to

judgment as a matter of law." *Zeleznik v. United States*, 770 F.2d 20, 22 (3d Cir. 1985).

## IV.    LEGAL ANALYSIS AND DISCUSSION

The events in question took place in February, 2011. Statutes of limitations are

"designed to promote justice by preventing surprises through the revival of claims that have been

allowed to slumber until evidence has been lost, memories have faded, and witnesses have

disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342 (1944);

*Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 164 (3d Cir. 2016), as amended (Feb. 24,

2016). Under New Jersey law, the statute of limitation for a personal injury tort claim, such as

the one asserted here, is two years. N.J.S.A. § 2A:14-2 ("Every action at law for an injury to the

person caused by the wrongful act, neglect or default of any person within this State shall be

commenced within 2 years next after the cause of any such action shall have accrued.").

It is undisputed that plaintiffs filed this lawsuit more than three years after the accident

and one and a half years after the statute of limitation expired on February 17, 2013. However,

plaintiffs argue the statute of limitations in tolled for various reasons. First plaintiffs argue that

the statute of limitations should be equitably tolled based on their "diligent inquiry" into the

identity of the real defendants; extraordinary circumstances, including alleged criminal acts the

defendants undertook to avoid identification; and substantial compliance with the statute of

limitations. Next, they argue that statutory tolling is appropriate under N.J.S.A. § 2A:14-22(a).

And finally, they argue that under the relations back doctrine, plaintiffs are merely adding new parties and should be permitted to treat this filing as an amendment to the complaint in *Rowell I*.

## A.  Equitable Tolling for Due Diligence

Where a court finds that it would be unfair to apply the statute of limitations because the defendant concealed its wrongdoing and prevented the plaintiff from bringing his claim within the limitations period, the court may apply equitable tolling.  *Cunningham*, 814 F.3d at 164. "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situations where it is demanded by sound legal principles as well as the interests of justice." *Clarke v. N.J.  State Police*, 2007 WL 4554254, at *3 (D.N.J. Dec. 20, 2007) (Chesler, J.) (citing *Freeman v. State of New Jersey*, 347 N.J. Super 11, 31 (App. Div. 2002).  New Jersey law[3] recognizes three circumstances, each of which equitably toll the statute of limitations:

> (1) where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass [fraudulent concealment];
> (2) where a plaintiff has in some extraordinary way been prevented from asserting her rights; and
> (3) where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.

*Williams v. City of Perth Amboy*, 2013 WL 2395038, at *2 (D.N.J. May 29, 2013) (Chesler, J.)

(citing *Binder v. Price Waterhouse & Co., L.L.P.,* 393 N.J. Super. 304, 313  (App. Div. 2007)).

---

[3] For personal injury actions, state statutes of limitations provide the applicable limitations period.  *McPherson v. United States,* 392 F. App'x 938, 944 (3d Cir. 2010). Further, "[s]tate law, unless inconsistent with federal law, also governs the concomitant issue of whether a limitations period should be tolled." *Dique v. N.J.  State Police,* 603 F.3d 181, 185 (3d Cir. 2010).  In this case, the injury occurred in New Jersey and there are no conflicts with federal law, so New Jersey law sets forth the basis for statutory tolling.

To find equitable tolling appropriate under any of the three categories, the plaintiff must show that he exercised "reasonable insight and diligence" in attempting to bring his case within the proper limitations period.  *Binder*, 393 N.J. Super. at 313.

The Third Circuit has set forth a conjunctive set of factors to establish equitable tolling based on fraudulent concealment:

> (1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts.

*See Riddle v. Bank of Am. Corp.,* 588 Fed. App'x. 127, 129-30 (3d Cir. 2014).

Albeit all three factors must be shown, defendants concentrate on the third.  As to reasonable due diligence, the plaintiff must show that he "pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society required of its members for the protection of their own interests and the interests of others."  *Cunningham,* 814 F.3d at 161, 163 (affirming summary judgment for the defendants where they were "armed with the facts necessary to allege their claim"); *Riddle* 588 Fed. App'x. at 130 (where plaintiff did nothing to determine whether the reinsurance arrangement was legitimate until after the statute of limitations had run, his diligence was insufficient for tolling).  While the New Jersey Supreme Court has not provided a definition of diligence, generally a plaintiff has an obligation to "'investigate all reasonable parties in a timely manner' to cross the threshold for due diligence." *Sarmineto v. St. Mary's Hosp. Passaic, NJ*, 2012 WL 5250219, at *6 (D.N.J. Oct. 23, 2012) (Linares, J.) (citing *Matynska v. Fried*, 175 N.J. 52 (2002)).

Defendants argue that plaintiffs' failure to identify the correct defendants was attributable to their lack of reasonable due diligence in attempting to uncover the relevant facts, pointing out

7

that Rowell knew the name of the trucking company was "Loocust" (nearly identical to the name

of the actual company); that that company had an address at "East Berlin, PA 17316"; and that

the vehicle had a truck number or designation of "K-27."  Rowell reported these identifiers to

Hartt in his accident report, which he signed and dated.  (Hartt Accident R.)

Defendants maintain that this information had been sufficient for both Rowell's employer

and the *Rowell I* defendants to discover the identities of Stecker and Honey Locust in a timely

fashion.  As for Hartt, Rowell's employer, the facts show that on the very day of the accident,

Paradis was able to find Honey Locust and contact Bumbaugh, using the Hartt Accident Report.

As a result, Hartt arranged for Honey Locust to pay $144.95 to cover repairs on the dented step.

From Hartt's prospective, the entire incident was resolved one month after the accident.

Similarly, *Rowell I* defendants Silva and King Transportation got a copy of the Hartt Accident

Report by obtaining Rowell's employment file, and quickly used it to locate and serve a

subpoena upon Honey Locust.  Even without a physical copy of the Hartt Accident Report,

Rowell wrote it from his personal knowledge.  Had he acted on what he knew with reasonable

diligence, he, like the others, could have identified the defendants within the statute of

limitations.

The Rowells argue that evidence of their diligence "is clear from looking no further than

the procedural record in the prior action on file with this Court," and call upon the fictitious

name rule, which requires the plaintiff to act with diligence and in good faith when identifying

an unnamed defendant.  *Farrell v. Votator Div.of Chemetron Corp.,* 62 N.J. 111, 116 (1973).

They ask the Court to broadly interpret the rule's diligence requirement to be analogous to the

"good faith" effort required of the plaintiffs in *Farrell.*  62 N.J. at 116 (1973).  In *Farrell*, the

plaintiffs timely brought suit against a manufacturer, but because they did not know the

manufacturer's identity, they used a fictitious name in the complaint. *Id.*

The analogy is strained—these plaintiffs initially named the *wrong* parties, and when

they learned of their error, they dismissed the case and brought the current action some time

later. The more appropriate analysis appears in *Mears v. Sandoz Pharmaceuticals*, 300 N.J.

Super. 622 (App. Div. 1997), where the plaintiff was precluded from using the fictitious party

rule because a simple inquiry at the job site or a review of the contract meeting minutes would

have revealed defendant's identity within the statute of limitations. *See also Younger v. Kracke*,

236 N.J. Super 595, 601 (Law Div. 1989) (holding that plaintiffs' failure to obtain police reports

which contained the defendants' identities precluded the plaintiffs from claiming they had acted

with diligence sufficient to toll the statute of limitations). The record here shows that by simply

asking his employer, Rowell could have promptly and easily discovered the correct parties to

sue. Under these undisputed facts, the Court finds equitable tolling to be inappropriate.

**B.  Equitable Tolling for Extraordinary Circumstances**

Plaintiffs alternatively argue that extraordinary circumstances existed which thwarted

their ability to correctly identify the defendants. According to them, the defendants' unlawful

failure to report the accident, and Stecker's decision to leave without providing contact

information, prevented them in "an extraordinary way" from filing in time. (D.E. 13

("Oppositiong") at 13.) Plaintiffs quote long passages from the Motor Vehicle and Traffic laws

of the State of New Jersey, N.J.S.A. §§ 39:4-129, 39:4-130, and the Federal Motor Carrier Safety

Regulations, 49 C.F.R. Part 390, to support their position that these statutes imposed an

"unconditional" duty on these defendants to exchange information and report the accident, and

that they should not be able to benefit from failing to do so. (Opposition at 17-18.)

9

The question becomes whether extraordinary circumstances exist here. Extraordinary circumstances are determined on a case by case basis. *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 N.J. 130, 147-48 (2013) (discussing the meaning and intent of the phrase "extraordinary circumstances" as required for the equitable tolling of the tort notice of claim requirement); *accord  Williams v. City of Perth Amboy*, 2013 WL 2395038, at *2.  In *D.D. v. University of Medicine & Dentistry of New Jersey*, the court found that a severe or debilitating medical condition could constitute an exceptional circumstance, but an attorney's inattentiveness to a case or general shortcomings in how he handled the matter could not.  213 N.J. at 150, 157. Some additional guidance exists in *Garcia v. Warren*, 2013 WL 3221306, at *3 (D.N.J. June 25, 2013), where the court observed that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."  Significantly, New Jersey courts have found that where the identity of the correct defendant was readily discoverable within the statute of limitations period, claims that are not timely filed are barred.  *Id.* at 153 (citing *Blank v. City of Elizabeth,* 162 N.J. 150, 152–53 (1999) (counsel's failure to investigate the identity of the owner of the pipe on which plaintiff was injured did not toll the statute of limitations, even when coupled with plaintiff's limited command of English).

Here, plaintiffs rely on *Jones v. Strelecki*, 49 N.J. 513, 520 (1967), to argue that the purpose of N.J.S.A. §§ 39:4-129 is to "prevent a driver from evading his responsibility by escaping the scene."  That case, however, makes no assertion that leaving the scene creates an extraordinary circumstance—in fact, it does not concern the statute of limitations at all.  Unless the defendants were actively obscuring their identities, even a violation of the law does not create

10

an extraordinary circumstance if the identities were otherwise readily available.[4]  No

extraordinary circumstances exist to support equitable tolling.

### C.  Substantial Compliance

Plaintiffs argue that the Court should apply the equitable doctrine of substantial

compliance, which "allows for the flexible application of a statute in appropriate circumstances."

*Negron v. Llarena,* 156 N.J. 296, 304 (1998); *see also Fahey v. Hollywood Bicycle Ctr., Inc.*,

2009 WL 749856, at *3 (D.N.J. Mar. 18, 2009) (Kugler, J.), *aff'd* 386 F. App'x 289 (3d Cir.

2010) (holding substantial compliance is not limited to substantive statutes of limitations, but

may be applied in cause of actions with procedural statutes of limitations, such as torts).  "Courts

invoke the doctrine of substantial compliance to avoid technical defects of valid claims."

*Negron,* 156 N.J. at 305; *see also Newell v. Ruiz*, 286 F.3d 166, 171 (3d Cir. 2002) (the doctrine

of substantial compliance is "designed to avoid technical rejection of legitimate claims").  To

apply the doctrine of substantial compliance to the statute of limitations, a plaintiff must show:

> (1) a lack of prejudice to the defendant; (2) steps taken to comply
> with the statute involved; (3) general compliance with the purpose
> of the statute; (4) reasonable notice of the claims; and (5) a
> reasonable explanation for the failure to strictly comply with the
> statute.

*Fahey v. Hollywood Bicycle Ctr., Inc.*, 386 F. App'x 289, 291 (3d Cir. 2010) (*citing Negron,* 156

N.J. at 296).  "[A] showing of the five factors is necessary in order to establish substantial

compliance."  *Avila v. Aramark Corp.*, 2010 WL 3025169, at *3 (D.N.J. July 30, 2010)

(Wolfson, J.).

---

[4] Plaintiffs also argue that failing to report the accident demonstrates that the defendants have "unclean hands."  In applying that doctrine, the Court notes that the Rowells also have "unclean hands," as they too failed to report the accident in accordance with N.J.S.A. §§ 39:4-129, 39:4-130, and the Federal Motor Carrier Safety Regulations, 49 C.F.R. Part 390.  "[W]here the wrong of both parties is equal, the position of the defendant is the stronger."  *Stella v. Dean Witter Reynolds, Inc.*, 241 N.J. Super. 55, 73 (App. Div. 1999), *certif. denied,* 122 N.J. 418 (1990)).

Substantial compliance, like the doctrine of equitable tolling, requires plaintiffs to "diligently pursue their claims." *Binder v. Price Waterhouse & Co., L.L.P.,* 393 N.J. Super. 304, 313 (App. Div. 2007); *see also Fahey*, 2009 WL 749856, at \*3 (holding an "attorney's lack of diligence is not a reasonable explanation" for failure to strictly comply with the statute of limitations). In order to provide a reasonable explanation for a plaintiff's failure to strictly comply with the statute, he must be able to show that he "exercise[ed] a reasonable level of diligence." *See Avila*, 2010 WL 3025169, at \*6 (holding the plaintiff did not exercise a reasonable level of diligence when he failed to track and confirm the complaint's timely delivery). These plaintiffs did not exercise a "reasonable level of diligence," having failed to take even the simple steps that Silva undertook to identify the proper defendants.

Further, plaintiffs do not posit a technical defect, such as an issue with the mail or a failure to docket something in a timely manner. *Khalil v. Costa*, 2010 WL 2346397 at \*1 (App. Div. June 11, 2010) (finding that defendants were entitled to a dismissal for the plaintiff's failure to comply with statute of limitations even though the late filing was as a result of prior counsel's error and was only one day late). New Jersey courts have set a "high standard…for litigants seeking equitable relief for technical defects of claims." *Avila*, 2010 WL 3025169, at \*7. Even if the standard was set at a lower bar, there simply is no technical defect or flaw to trigger the doctrine of substantial compliance.

## D. Statutory Tolling

Plaintiffs argue that the limitations period should be statutorily tolled by N.J.S.A § 2A:14-22(a), which pauses the statute of limitations where the defendant "is not a resident of this State when such cause of action accrues, or removes from this State after accrual thereof…and…**after diligent inquiry and effort**, long-arm service cannot be effectuated."

N.J.S.A § 2A:14-22(a) (emphasis added). As with equitable tolling, this tolling statute is designed to "reach a just accommodation of individual justice and public policy to avoid 'obvious and unnecessary harm [to] individual plaintiffs.'" *Knauf v. Elias*, 327 N.J. Super. 119, 126 (App. Div. 1999) (citing *Velmohos v. Maren Eng'g Corp.,* 83 N.J. 282, 293 (1980)). In its current form, N.J.S.A § 2A:14-22(a) tolls the statute of limitations "not against all individual defendants who do not reside in the state, but only against those who are not subject to the jurisdiction of New Jersey courts or who cannot be found after reasonably diligent efforts." *Knauf*, 327 N.J. Super. at 126 (citing *Crespo v. Stapf,* 128 N.J. 351, 363 (1992)).

Diligent inquiry by the plaintiff is a necessary prerequisite to statutory tolling under N.J.S.A. § 2A:14-22(a). *See Riddle v. Bank of Am. Corp.,* 588 Fed. App'x. 127, 129-30 (3d Cir. 2014). Here, Hartt, which needed to identify the defendants so it could collect for damage to its truck, was easily able to find them. The Court's prior discussion of the means available to plaintiffs for identifying these defendants applies with the same force here, and their manifest lack of diligence makes the tolling statute inapplicable.

### E. Relations Back Doctrine

Finally, plaintiffs argue that they are entitled to some of the procedural protections of the relations back doctrine, which they might have received if they had named a fictitious party in *Rowell I.* Plaintiffs essentially contend that, had they not filed this as a new suit, they may have been able to amend the complaint from *Rowell I* to include the current defendants. They rely on New Jersey Court Rule 4:9-3, which governs "an amendment changing the party against whom a claim is asserted" and whether it "relates back" to the filing of the original complaint. It is well established that to assert New Jersey Court Rule 4:9-3, the plaintiff must demonstrate that:

> (1) the claim asserted in the amended complaint arose out of the
> conduct, transaction, or occurrence alleged or sought to be alleged

in the original complaint; (2) the new defendant had sufficient notice of the institution of the action not to be prejudiced in maintaining his or her defense; and (3) the new defendant knew or should have known that, but for the misidentification of the proper party, the action would have been brought against him or her.

*Arroyo v. Pleasant Garden Apartments*, 14 F. Supp. 2d 696, 701 (D.N.J. 1998) (citing *Viviano v. CBS, Inc.*, 101 N.J. 538, 553 (1986)).  To apply this doctrine, plaintiffs must seek to amend a pending complaint.  *See* N.J. Ct. R. 4:9-3; *see also Viviano*, 101 N.J. at 553 ("*Rule* 4:9-3 and *Rule* 4:26-4 permit an amended pleading to relate back to an earlier one").

Critically, plaintiffs here are not asking for the Court to allow them to amend the pleadings to correct the name of the defendants, add a new claim, or provide the identity for a fictitiously named defendant—all appropriate reasons to invoke the relation-back doctrine.  *See e.g. Bradley v. Powles*, 90 N.J. Super 550, 552 (App. Div. 1966) (correcting a misnomer from an earlier complaint), *certif. denied*, 47 N.J. 422 (1966).  Instead, plaintiffs want the Court to revive a complaint in a case that has been dismissed, and then have their complaint in a new and separate action relate back, a feat for which they have provided no authority.  All of the cases they cite in support share an important distinguishing feature:  the amendment sought was to the case at bar, not to a complaint filed in a different closed case.  *See, e.g.*, *Viviano*, 101 N.J. at 556 (allowing a sixth amended complaint to relate back to the date of the original complaint); *see also Smelkinson v. Ethel & Mac Corp.*, 178 N.J. Super at 465 (allowing amendment of the original complaint to assert new and/or different claims against previously named defendant and acknowledging that "a new and separate action against the carrier would now be barred").  There is no precedent for relating this case back to the filing date of *Rowell I*, and the Court declines to do so.

14

## V.    CONCLUSION

For the foregoing reasons, the Court finds Ronald and Joann Rowell's claims to be time-barred, and grants Honey Locust and Stecker's motion for summary judgment.  An appropriate order will be entered. The Clerk of the Court is directed to close this case.


                                                    /s/ Katharine S. Hayden
Date: June 30, 2016                                 Katharine S. Hayden, U.S.D.J.

15